ALAN WAYNE SHANK *v.* STATE OF INDIANA.

[No. 3-722A30. Filed November 21, 1972. Rehearing denied December 18, 1972.]

148

*Thomas L. Ryan,* Deputy Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General for appellee.

HOFFMAN, C.J.—Three issues are presented in this appeal. The first issue is whether the conviction is sustained by sufficient evidence of probative value. The second issue is whether certain evidence was improperly admitted. The third issue is whether the trial court erred in refusing to credit the sentence of the defendant with the time he served while awaiting trial.

The defendant was charged by affidavit with the crime of theft. Trial was to the court without the intervention of a jury. The defendant was found guilty of the crime of theft, judgment was entered, and the defendant was committed to the "Indiana Department of Corrections for a period of not less than one (1) year, nor more than ten (10) years." The timely motion to correct errors filed by defendant was overruled and this appeal followed.

The facts pertinent to this appeal may be briefly summarized from the record before us as follows:

Charles Downey, an automobile salesman and dealer, testified that on the morning of October 8, 1971, an automobile was missing from his car lot in Fort Wayne, Indiana. The car was reported stolen at approximately 1:30 P.M. on that day. The missing car was a black 1964 Supersport Chevelle Malibu Convertible with a red interior, bucket seats and white top, although Downey also testified that he was "not absolutely positive about the color of the top." Downey testified that "approximately three weeks after I [Downey] reported the automobile stolen", he observed the car in "Burkhart's bullpen."

Ralph Mace testified that he was employed by Downey as a car salesman and lot manager on October 7th and 8th of 1971. Mace further testified that when he went to lunch on October 8, 1971, he saw "the vehicle * * * up against the curb" on Berry Street. Mace also testified that he saw defendant in or standing near the car.

Danny Jackson, a police officer of the City of Fort Wayne, Indiana, testified that on October 28, 1971, he discovered a

1964 Chevrolet parked "off the Scholtz Road." Officer Jackson identified the defendant as having been found lying in the back seat of the car asleep.

Gary Grant, also a police officer of the City of Fort Wayne, Indiana, testified that he was the partner of Officer Jackson on the night of October 28, 1971. He testified that on that night he and Jackson found a vehicle parked on the Scholtz Road. He described the vehicle as a 1964 black Chevelle convertible, a Supersport model with a white top and red interior.

The defendant, Alan Wayne Shank, testified that on October 7, 1971, the same day he test drove the stolen car, he bought a 1965 black Chevelle Supersport and that this was the car in which he was found asleep by the police. During the direct examination of the defendant a Uniform Traffic Ticket and Complaint which Shank had received on October 26, 1971, was introduced into evidence. The ticket described the car as a "65 Chev."

Betty Lanning, a witness called by the defendant, testified that on the night of October 7, 1971, she drove the defendant to a garage or a used car lot where the defendant said he had made arrangements to buy a car.

Sharon Lewis another witness called by the defendant, testified that the defendant had taken her downtown on the day of October 8, 1971, in a black Chevrolet Malibu Supersport, and that the defendant had told her it was a 1965 model.

On appeal, the first issue raised is whether the conviction is sustained by sufficient evidence. In this regard, appellant first contends that the vehicle in which he was arrested was not sufficiently identified as the stolen vehicle.

In reviewing the sufficiency of the evidence to support this conviction, this court may not weigh the evidence nor determine the credibility of the witnesses. We may only look to the evidence and reasonable inferences flowing therefrom which support the finding of the trial

court. The conviction must be affirmed if there is evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *McKinley* v. *State* (1972), 258 Ind. 348, 281 N.E.2d 91, 92; *Harris* v. *State* (1972), 258 Ind. 341, 281 N.E.2d 85, 86. A conviction may be supported wholly by circumstantial evidence if it is of such probative value that a reasonable inference of guilt be drawn therefrom. *Gunn* v. *State* (1972), 258 Ind. 374, 281 N.E.2d 484, 485; *Vaughn* v. *State* (1971), 255 Ind. 678, 266 N.E.2d 219, 220.

In the instant case, the defendant testified that he purchased a 1965 Chevelle that was similar to the stolen car. This testimony was contradicted by the testimonies of Downey and Mace who identified the car recovered by the police as the stolen car. Having reviewed all of the evidence and reasonable inferences flowing therefrom, we held that there was sufficient probative evidence from which the trier of fact could have found beyond a reasonable doubt that the car in which the defendant was found was the stolen automobile.

The appellant next contends that the mere fact that he was sleeping in the back seat of the car is insufficient to prove the crime of theft.

In the case at bar the State was required to establish that the defendant knowingly obtained or exerted unauthorized control over the automobile with the intent to deprive the owner of the use thereof. See: IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns 1972 Cum. Supp.).

The evidence in the record before us is uncontroverted that the defendant was found asleep in the back seat of the car, at 1:30 A.M., on October 28, 1971, with the key in the ignition and the motor running. Furthermore, there is evidence that the defendant drove "his" car downtown on the day following the day that the car was stolen. There is other evidence that the defendant was seen standing near the

stolen vehicle when it was parked near the curb on Berry Street.

IC 1971, 35-17-5-13, Ind. Ann. Stat. § 10-3040 (Burns 1972 Cum. Supp.), provides, in pertinent part, as follows:

"(8) 'Knowingly' means that a person knows, or acts knowingly or with knowledge, of: (a) the nature or attendant circumstances of his conduct, described by the section defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

"(b) The result of his conduct, described by the section defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

\* \* \*

"(10) 'Obtains or exerts control over property' includes but is not limited to the taking, carrying, driving or leading away, concealment, or the sale, conveyance, encumbrance, transfer of title to or interest in, or possession of property, or the securing or extending a right to retain that to which another is entitled."

Also, in *Williams* v. *State* (1969), 253 Ind. 316, at 321-322, 253 N.E.2d 242, at 246, 19 Ind. Dec. 623, it was stated:

"By contrast the word *control* means the power or authority to manage, superintend, restrict, regulate, direct, govern, administer or oversee. Black's Law Dictionary, Fourth Edition. It is the power or authority to manage . . . restrict. *State* v. *First State Bank of Jud* (1924), 52 N.D. 231, 202 N.W. 391.

'Ordinarily control means . . . power or authority to check or restrain; regulating power; restraining or directing influence . . . *so to it may imply, or not imply possession, depending on the circumstances . . .*' 18 C.J.S., p. 28. (our emphasis)

"See also the varying definitions of 'Control' in 9A Words and Phrases, p. 4 and following."

It has also been held that possession of stolen property shortly after a theft may support an inference of guilt. *Swift*

v. *State* (1970), 255 Ind. 337, 264 N.E.2d 317; *Freeman* v. *State* (1967), 249 Ind. 211, 231 N.E.2d 246.

Finally, in *Tuggle* v. *State* (1969), 253 Ind. 279, 283, 252 N.E.2d 796, 799, it was held that intent to permanently deprive the owner of the use or benefit of property may reasonably be inferred from unauthorized possession and the totality of circumstances surrounding the events in the case.

In the case at bar, the evidence as hereinabove set forth has sufficient probative value from which the trier of fact could reasonably have inferred that the defendant was guilty beyond a reasonable doubt of each element of the offense charged.

The second issue argued by appellant in the instant case is whether certain evidence was improperly admitted by the trial court. Appellant contends that an answer of Ralph Mace, on cross-examination, was "an evidentiary harpoon and should have been stricken."

The portion of the record before us to which this contention refers reads as follows:

"Q. All right. And, in fact the license number that you saw on that particular car of 2C195 really is the only identifying characteristic that you remember about the car you saw on the corner of Berry and Calhoun?

"A. Well, I knew the car.

"Q. Well, let me rephrase the question. I would ask the Court to strike that answer as nonresponsive.

"THE COURT: No. No. I'm sorry to overrule you on that. You asked him about any distinguishing features about the thing or how he knew the car and he said he knew the car. That's about as responsive as you can get, I believe."

The "evidential harpoon" was discussed in *White* v. *State* (1971), 256 Ind. 64, 272 N.E.2d 312, at 315-316, as follows:

"The volunteering by police officers of inadmissible testimony prejudicial to the defendant has been condemned time and again by both state and federal courts. For example, in Wright v. State, Okl. Cr. App., 325 P. 2d 1089,

1093 (1958), * * * the court stated: *'This type of testimony has often been referred to as an "evidential harpoon" that has been wilfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same.* This court has never condoned, but often criticized a witness being intoxicated with eagerness in all out effort to obtain a conviction. * * * Officers must be aware that an over-zealous attitude is, in most instances, detrimental to the prosecution and often results in a retrial of the case at considerable expense to the state.' 369 F. 2d at 189-190. (Our emphasis)"

In the instant case, the answer of the witness was clearly not an "evidential harpoon." Furthermore, we can find no abuse of judicial discretion or prejudicial error in the denial by the trial court to grant the motion to strike of the defendant. The trial court was in the position to observe and hear the cross-examination of the witness. The trial court concluded that the answer of the witness was responsive to the question asked. We will not disturb that conclusion.

Appellant next contends that the following testimony of Charles Downey, on direct examination, was inadmissible hearsay evidence:

"Q. You made a report out for a stolen vehicle?
"A. For a stolen vehicle.
"Q. Have you ever seen the car since that time?
"A. Yes, I have.
"Q. And, when was that?
"A. Well, it was approximately three weeks after I reported the automobile stolen, I observed the car in Hoagy's Bullpen or Burkhart's bullpen out on Wells Street.
"Q. And, the car was recovered by you then?
"A. It was.
"Q. How did you know the car was at Hoagy's bullpen?

[OBJECTION BY DEFENDANT]
* * *

"A. See, the car was at Burkhart's bullpen out on Wells Street, not Hoagy's, and I was notified that the auto-

mobile was there by the City, Fort Wayne Police Department."

In *Trustees of Indiana University* v. *Williams et al.* (1969), 252 Ind. 624, at 631, 251 N.E.2d 439, at 443, it was stated:

"Hearsay evidence has been defined as testimony by a witness in a judicial proceeding relative to an extrajudicial declaration by another and which is offered for the purpose of proving the facts asserted by the declarant." (Citing authorities.)

In the instant case, the witness merely testified that he observed the car, having been notified of its whereabouts by the police. He testified as to his observance. He did not testify as to an out-of-court declaration for the purpose of proving the facts asserted in court. No hearsay was involved.

The next contention argued by appellant is "[t]he extrajudicial conversation of the defendant with Officers Jackson and Grant was impermissible because it was illicited before arrest and Miranda rights advice and without determining if defendant was able to appreciate and understand the rights when they were ultimately read to him."

The record before us indicates that appellant was taken into custody at the scene of the arrest, adequately advised of his "Miranda rights", and then, without questioning by the police, voluntarily stated "that a friend of his named Stoney was coming to his location with another stolen vehicle."

The defendant was in custody, but was not being interrogated by the police. Therefore, under the authority of *New* v. *State* (1970), 254 Ind. 307, 259 N.E.2d 696, the statement was admissible. In *New*, at 313-314 of 254 Ind., at 700 of 259 N.E.2d, it was stated:

"The trial court correctly admitted this testimony. The requirements of warning and waiver imposed by *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694, apply only to custodial interrogation. The statements made to Sgt. Petro while appellant was admittedly in custody, were not made in response

to any interrogation. These statements were freely, voluntarily and spontaneously given by the appellant. Such statements are admissible in evidence. In *Miranda* v. *Arizona, supra,* the court said:

'The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.' 384 U.S. at 478, [86 S.Ct. at 1630]."

Appellant next contends that the "Stolen Motor Vehicle Report" was improperly used as probative evidence to show the identity of the car.

We need not decide the merit of this contention because if there was error, it was rendered harmless because the identity of the automobile was clearly proved by other competent evidence. *Easton* v. *State* (1972), 258 Ind. 204, 280 N.E.2d 307. 9 I.L.E., *Criminal Law,* § 888, at 133, and cases there cited.

The final issue argued by appellant is whether the trial court erred in refusing to "credit defendant with time against his sentence which he spent awaiting trial and sentence."

In support of his argument the only authority cited by appellant is *Tate* v. *Short* (1971), 401 U.S. 395, 91 S.Ct. 668, 28 L. Ed. 2d 130. The opinion in *Tate* was premised on *Williams* v. *Illinois* (1970), 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586, from which the court quoted at 398-399 of 401 U.S., at 671 of 91 S. Ct., as follows:

"Our opinion in *Williams* stated the premise of this conclusion in saying that 'the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status.' 399 U.S., at 244, 90 S. Ct., at 2023-2024."

It must be remembered, however, that "[t]he object of bail very definitely is not to effect punishment in advance of

conviction." *Hobbs* v. *Lindsey, Sheriff, etc.* (1959), 240 Ind. 74, at 78, 162 N.E.2d 85, 88. The same is true of pre-sentence incarceration. Therefore, *Tate* v. *Short, supra,* is not here applicable.

There is some authority that credit for jail time served awaiting trial is a matter of right. *Mott* v. *Dail* (E.D.N.C. 1972), 337 Fed. Supp. 731. The weight of authority, however, supports the proposition that without legislative authority there is no right to credit for time served awaiting trial. *Sanders* v. *State of South Carolina* (D.C.S.C. 1969), 296 Fed. Supp. 563, 573; *Landman* v. *Mitchell* (5th Cir. 1971), 445 Fed. 2d 274, (Cert. denied 404 U.S. 1022).

In the instant case, the defendant was convicted and sentenced prior to the enactment of IC 1971, 35-8-2.5-1, Ind. Ann. Stat. § 9-1828 (Burns 1972 Cum. Supp.). The defendant does not have a constitutional right to credit for the time he served while awaiting trial, and at the time he was sentenced there was no statutory authority commanding the trial court to give appellant credit toward service of his sentence for any days spent in confinement.

The judgment of conviction of the trial court is affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 289 N.E.2d 315.