HOWELL ATKINS *v.* STATE OF INDIANA.

[No. 3-473A36. Filed February 20, 1974. Rehearing denied April 11, 1974.]

Anthony V. Luber, of South Bend, for appellant.

Theodore L. Sendak, Attorney General, Robert E. Dwyer, Deputy Attorney General, for appellee.

## I.

## STATEMENT ON THE APPEAL

STATON, J.—South Bend Police received a call on May 31, 1972 that three men were acting suspiciously in a dark alley behind Goff Heating, Inc. located at 1417 South Michigan Street. It was 1:00 o'clock A.M. in the morning when the police squad car, with the headlights off, turned into the dark, dirt alley and saw Howell Atkins leaning against a handcart next to a trailer. Howell Atkins and two other men ran when they realized that the police were nearby. The handcart wheels left an easily identifiable trail in the soft dirt to the back door of the building. Pry marks were found on the door. Goff Heating, Inc. had been burglarized. The trailer was wired to an automobile and loaded with bulky cartons which were identified at the scene by the office manager as the property of Goff Heating, Inc. Howell Atkins and the two accomplices were caught shortly after their discovery in the alley and arrested. The automobile and attached trailer were taken to the police station a few hours later. A pry bar was found under the front seat of the automobile. It matched the pry marks on the door perfectly.

A jury found Howell Atkins guilty of second degree burglary.[1] He was sentenced to two (2) to five (5) years and placed in the custody of the Department of Corrections. His motion to correct errors raises six issues. Four of these issues question the sufficiency of the evidence. These issues are treated as a single issue and denominated "Issue One" in this opinion pursuant to Rule AP. 8.3(A)(7) of the Indiana Rules of Procedure. The second issue questions the validity of the warrantless search of the automobile at the police station. Issue three concerns the State's tendered instruction number one (1) which addressed itself to fragmentary and circumstantial evidence presented at trial.

---

1. IC 35-13-4-4(b); Ind. Ann. Stat. § 10-701(b) (Burns 1956).

Our opinion concludes: (1) that the evidence was sufficient; (2) that the warrantless search at the police station was valid; and (3) that the State's tendered instruction was proper. We affirm.

## II.

## STATEMENT OF THE FACTS

Mr. Neal Lee resides at 1406 South Main Street in South Bend, Indiana. The rear of his home faces toward the rear of the property owned and occupied by Goff Heating, Inc. At approximately 1:00 o'clock A.M. on the morning of May 31, 1972, Mr. Lee observed three men in the alley which separates these two parcels of property. Although he could not specify the identity or describe the theft activities of those men, Mr. Lee did note movement and observed the men attaching a trailer to a car parked in the alley. Fearing that the men were entering his garage, Mr. Lee telephoned the police.

Officers Singleton and Hayes of the South Bend police force arrived at the scene about 15 to 20 minutes later. The officers drove their patrol car down the alley with the headlights turned off to where the men had been observed. They turned their spotlight on only after discovering the three men. Howell Atkins was identified by the officers as the man they observed next to the parked trailer leaning against a hand-cart in the alley behind Goff Heating, Inc. Upon their discovery, the three men fled the scene. Officer Singleton pursued and apprehended Atkins and a second man, placed them under arrest and returned them to his patrol car. The third man was apprehended shortly afterwards.

Officers Singleton and Hayes later discovered that the trailer connected to the car parked at the scene contained several large cartons and noted that some were labeled "Air-Conditioner." Further investigation resulted in the discovery of tracks in the dirt alley leading from the trailer to the doors of the Goff Heating, Inc. storage building. Those tracks

matched the trail left by the handcart in the possession of Howell Atkins when Officers Singleton and Hayes arrived at the scene. Following those tracks, the officers noticed that the latches on two of the doors to the Goff Heating, Inc. building had been pried off.

Mr. Lee Ullery, the office manager of Goff Heating, Inc., arrived at his employer's place of business after being notified of the break-in. Ullery was apprised of the situation by Officers Singleton and Hayes. Ullery confirmed that the handcart at the scene and the cartons in the trailer were the property of his employer.

The car and trailer were taken to police headquarters. Mr. Ullery again identified the contents of the trailer as the merchandise of Goff Heating, Inc. A warrantless search of the trailer and the automobile was then conducted by the police and resulted in the discovery of a pry bar under the front seat of the automobile. Marks left by that pry bar were later matched with those on the doors of the Goff Heating, Inc. storage building.

Howell Atkins made vigorous objections to the testimony of the arresting officers concerning the pry bar. He contended that this testimony violated his Fourth Amendment rights since the pry bar was the product of an unlawful search and seizure. The trial court excused the jury and held a hearing on Howell Atkins' motion to suppress. The trial court overruled the motion to suppress.

In his defense, Atkins presented the testimony of an alibi witness. James Wilder lived near Goff Heating, Inc. on South Main Street. Wilder testified that Howell and two companions had visited his home at approximately 11:30 o'clock P.M. on May 30, 1972. Wilder further testified that he had gone to his bedroom to lie down sometime after his guests arrived. Later, he noticed that he could no longer hear his guests. Finally, the next sound he recalled was a policeman apprehending someone at the side of his home.

Wilder testified that this last event occurred some five or ten minutes after he had noticed the absence of his guests.

Howell Atkins' motion to correct errors presents the issues set forth below.

## III.

## STATEMENT OF THE ISSUES

We will consider six issues:

ISSUE ONE: Four (4) of the issues concern sufficiency of the evidence and will be treated here as a single issue.

ISSUE TWO: Was the warrantless search valid and the pry bar testimony admissible?

ISSUE THREE: Did the trial court err in giving State's tendered final instruction number one?

## IV.

## STATEMENT ON THE LAW

ISSUE ONE: *Sufficiency of the Evidence.*

Atkins contends that the State failed to present sufficient evidence connecting him to the burglary of the Goff Heating, Inc. storage building on May 31, 1972. He contends that only an opportunity to commit the crime was proven by the State. *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6; *Manlove* v. *State* (1968), 250 Ind. 70, 232 N.E.2d 874, 235 N.E.2d 62.

When reviewing the sufficiency of the evidence, this Court cannot weigh the evidence nor determine the credibility of witnesses, but may look only to the evidence and reasonable inferences therefrom most favorable to the State. A conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the Appellant was guilty beyond a reasonable doubt. *Walker* v. *State* (1973), 155 Ind. App. 404, 293 N.E.2d 35; *Shank* v. *State* (1972), 154 Ind. App. 147, 289 N.E.2d 315. Circumstantial evidence is subject

to the same general review. *Walker* v. *State, supra, Miller* v. *State* (1972), 153 Ind. App. 54, 285 N.E.2d 843; *Taylor* v. *State* (1972), 259 Ind. 25, 284 N.E.2d 775. The specific test for the examination of circumstantial evidence requires that we view the evidence, not for the purpose of determining whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom which tends to support the finding of the trial court. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554, 556; *Glover* v. *State* (1973), 157 Ind. App. 532, 300 N.E.2d 902.

The circumstantial evidence before us is that Atkins was discovered by police in a dark, dirt alley where a neighbor had reported suspicious activities. Atkins was first seen by Officers Singleton and Hayes leaning against a handcart, later identified as one belonging to Goff Heating, Inc. The handcart was located next to a trailer containing cartons identified as merchandise of Goff Heating, Inc. Tracks left by the handcart led from the trailer to the door of the storage building which had been forcibly entered. A pry bar seized from the car matched the pry marks on the door of the storage building. When Atkins was discovered at the scene, he fled. Evidence of flight or other actions calculated to hide a crime or effect an escape is admissible as evidence of guilt. It is for the trier of fact to assign the weight to such evidence. *Turner* v. *State* (1970), 255 Ind. 427, 429, 265 N.E.2d 11. Presence at the scene of a crime in connection with other circumstances tending to show Atkins' participation may be sufficient to support a finding of his guilt. *McGill* v. *State* (1969), 252 Ind. 293, 247 N.E.2d 514.

The above circumstantial evidence and the reasonable inferences therefrom support the conclusion that Atkins was guilty beyond a reasonable doubt.

ISSUE TWO: *Search and Seizure.*

Atkins contends that the pry bar testimony was erroneously admitted since the discovery of the pry bar was the result

of a constitutionally prohibited warrantless search. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564; *Katz* v. *United States* (1967), 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 576. After Atkins' arrest, the automobile with the attached trailer containing contraband was removed from the dark, dirt alley to the rear of the South Bend Police Station. Detective Sergeant Borkowski searched the automobile. He testified:

"Q. Now Officer may I turn your attention to the early morning hours of the 31st day of May, 1972. At that time were you called to investigate a burglary at the Goff Heating Company on South Michigan Street?

"A. Yes I was.

"Q. Now as the result of that investigation what—what was the scene, may I ask, when you arrived?

"A. I was called to the police station, to the rear of the police station in the Street Department Garage. At the scene I found an automobile and —

THE COURT: Wait a minute, you were called to the back of the police station?

"A. Right.

"Q. Is that where you found the car?

"A. Yes.

"Q. Go ahead.

"A. In the rear of the car was a trailer that was wired onto the bumper. In the trailer was boxes of articles and I believe, if I am correct, one article was exposed completely.

\* \* \*

"Q. Now Officer who else was at that scene right there with you?

"A. Officer Hayes, Officer Singleton, Sergeant Resil and Sergeant Odish and Sergeant Mahank.

"Q. Now as the result of this investigation did you make a search of that car?

"A. Yes.

"Q. And what did you find?

"A. I found a pry bar.

"Q. Officer, at the time you made this search did you have a warrant?

"A. No.

"Q. On what basis then did you make a search of this car?

"A. There was a burglary comitted [committed]. In the commission of this burglary an automobile was used. On the rear of this automobile was a trailer. The boxes that were in the trailer were marked Goff Heating. I was also told that there were three suspects in custody, finding out that the automobile did belong to one of the suspects in custody. The owner of this Goff Heating was called to the police station where he was escorted to the rear where we were. He identified the merchandise on that trailer as being his. With this in mind I then searched the automobile.

"Q. Where in the car was that pry bar found?

"A. Under the front seat.

"Q. Now Officer, what did you do with that pry bar?

"A. I then took the pry bar to the scene of this burglary.

"Q. What did you do with it there?

"A. I then went to the door which was indicated to me as being the point of entry which was to the east side of this building, a small walk-in type door. I then found the pry marks that were on the molding around the door and matched the pry bar to these pry marks that were on there.

"Q. Did they match?

"A. Perfectly."

Atkins' contention of error is founded upon the warrantless search at the police station. He does not contend that the police did not have probable cause to search the automobile in the dark, dirt alley behind Goff Heating, Inc. which had been burglarized at 1:00 o'clock A.M. in the morning; nor does he contend that exigent circumstances did not exist at the scene. At the scene and later behind the South Bend Police Station, the trailer loaded with bulky, identified contraband remained wired and attached to the automobile. *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543; *Brinegar* v. *United States* (1949), 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879. His contention of error when reduced to its simplest terms is that the probable cause and exigent

circumstances ceased to exist at the rear of the South Bend Police Station where the automobile and trailer became temporarily immobilized. We do not agree.

Confronted with a very similar factual situation,[2] the United States Supreme Court held in *Chambers* v. *Maroney* (1969), 399 U.S. 42, 52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 that the probable cause and exigent factors continued to exist at the police station.[3] The Court stated that:

". . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.[10]

\* \* \*

"10 It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe

2. In *Chambers* v. *Maroney, supra,* two men with guns had robbed a service station. One man was described as wearing a green sweater and the other a trench coat. A description of the car was also given the police by two teenagers who had noticed the blue compact station wagon earlier. The car and its occupants answering this description were found in a dark parking lot. They were taken to a police station where the automobile was searched. Incriminating evidence was found.

3. The United States Supreme Court stated in *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 482, 91 S. Ct. 2022, 29 L. Ed. 2d 564: ". . . [A]s to the automobile exception, we do not question the decisions of the Court in Cooper v. California, supra, and Chambers v. Maroney, supra. . . ." Therefore, *Coolidge* v. *New Hampshire, supra,* does not affect *Chambers* v. *Maroney, supra,* and we will not discuss *Coolidge* v. *New Hampshire* further in this opinion.

for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house."

In *Isaac* v. *State* (1971), 257 Ind. 319, 274 N.E.2d 231, the description of two men who had just robbed a finance company in Muncie, Indiana was radioed to police. Their blue 1967 Buick Electra convertible was observed at a rest stop on I-69. They were followed and stopped. Applying *Chambers* v. *Maroney*, Justice Hunter, writing the opinion in which all Justices concurred, stated:

"Since these men fit the description given quite closely, and a revolver was seen in the car, there was probable cause to believe these were the men who had perpetrated the crime. The men were stopped about one hour after the crime in a make of car suspected of being involved in the crime, driving in a direction leading away from the crime and leading directly to another state about fifty miles away. There was reasonable cause to believe these men had committed the crime and there was also reasonable cause to believe that instruments of the crime, fruits of the crime, and evidentiary items concerning the crime would be found concealed in the car.

"In this instance it was quite reasonable to take the car to the police post before searching it. It was raining quite hard at the time and I-69, which has a seventy (70) mile per hour speed limit, is a very busy road, especially in and around Fort Wayne where the car was stopped. With the inclement weather and busy traffic travelling at high speeds, a search on the spot might have created a severe safety hazard, both for the passing cars and for the investigating officers. It also served the owner's convenience and safety of his car to have the automobile and the keys together at the police post.

"No intrusion on Fourth Amendment rights resulted from the search of Isaac's automobile. The police had reasonable cause to believe instruments and fruits of the crime would be found in the vehicle. This car, originally stopped on the highway, was movable, the occupants were alerted, and the car's contents may never have been found again. The search was clearly reasonable under the doctrine enunciated in Chambers v. Maroney, supra." *Isaac* v. *State, supra,* 274 N.E.2d at 235-236.

In *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738, where the officer observed a case of watches in the back of a car, he arrested the occupants and then made a later second search of the car at the police post. Our Indiana Supreme Court again applied the rationale of *Chambers* v. *Maroney, supra.* Justice Hunter, writing for the Court in an opinion in which all Justices concurred, stated:

> "In the case at bar, the car was stopped along a highway at night. Officer Jackson had probable cause to believe that the automobile contained stolen property. Under Chambers v. Maroney, *supra,* an immediate search would have been permissible. Also, see Carroll v. United States, *supra.* Furthermore, *Chambers* makes it quite clear that where an immediate search may be impractical or perhaps unsafe, and where it would serve the owner's convenience and safety of his car, the police can seize the car and transport it to the station house where a warrantless search may be conducted. The facts in this case fall squarely within the ruling in *Chambers,* and we conclude, therefore, that the search at the police post was valid. It necessarily follows that the items seized during the search were admissible at trial." *Luckett* v. *State, supra,* 284 N.E. 2d at 743-744.

Atkins' objection to the warrantless search at the police station is without merit. The doctrine expressed in *Chambers* v. *Maroney, supra,* and followed in *Isaac* v. *State* and *Luckett* v. *State* is definitive. An immediate, efficient search of the automobile in a dark, dirt alley at the scene of the burglary was not only impractical but perhaps unsafe. Only three suspects were known. More could have participated in the burglary and could have been nearby in surrounding houses. Less distracting circumstances existed at the police station for an efficient continuation of the investigation. Additional personnel and facilities were available at the police station. Placing the automobile and trailer at the police station in a garage would not only serve the convenience and safety of the owner, but the convenience and safety of the victim whose stolen goods remained in the trailer. The continuity of the

probable cause and exigent circumstances which existed at the scene remained intact at the police station. The warrantless search of the automobile was valid and the pry bar testimony was admissible. We find no error.

ISSUE THREE: *State's Tendered Final Instruction Number One.*

Atkins' final contention of error is that the trial court erred in giving the State's tendered final instruction number one. He further contends that the subject instruction invades the province of the jury and sets the standard of appellate review rather than the law which a jury is to apply. This contention is also without merit.

The instruction objected to reads as follows:

"Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of the testimony to be determined from the whole body of the evidence. A circumstance considered apart from the other evidence may be weak, if not improbable, but when viewed in connection with the surrounding facts and circumstances may be so well supported as to remove all doubt as to its existence as detailed by the witnesses. Acts considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt."

This very instruction has recently been held proper by our Supreme Court and the First Division of this Court. See *Millar* v. *State* (1973), 260 Ind. 368, 295 N.E.2d 814 and *Olson* v. *State* (1973), Ind. App., 304 N.E.2d 830. We find no error.

## V.

## DECISION OF THE COURT

The circumstantial evidence revealed more than a mere opportunity. The evidence and the reasonable inference therefrom supported the conclusion that Howell Atkins actively participated in the burglary beyond a reasonable doubt.

*Chambers* v. *Maroney, supra,* which was followed by our Indiana Supreme Court in *Isaac* v. *State, supra,* and *Luckett* v. *State, supra,* is definitive. The warrantless search of the automobile at the police station a few hours after it was removed from the scene of the burglary is valid and the pry bar testimony is admissible.

Instruction Number One (1) tendered by the State of Indiana is proper. Therefore the judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Garrard, J., concur.

NOTE.—Reported at 307 N.E.2d 73.