MARK A. PRUITT, DONALD L. JACKSON, DEBORA DILLMAN JACKSON *v.* STATE OF INDIANA.

[No. 1-175A13.  Filed September 23, 1975.]

*William B. Olsen,* Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LOWDERMILK, J.—This is an appeal by Mark A. Pruitt, Donald L. Jackson, and Debora Dillman Jackson from convictions of theft[1] and visiting a common nuisance.[2]

## PROCEEDINGS BELOW:

On July 22, 1974, the defendants were charged by informations with theft and maintaining a common nuisance. The defendants moved to dismiss the information filed for maintaining a common nuisance, but their motion was denied. After waiving their right to a jury, the defendants were tried before the Putnam County Circuit Court on August 29, 1974.

---

1. IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030(1)(a) (Burns Supp. 1974).
2. IC 1971, 16-6-8-7 (Burns Code Ed.).

Defendants Mark A. Pruitt and Donald L. Jackson were found guilty of visiting a common nuisance, fined $150.00 each, and sentenced to the Indiana State Farm for six months. On the charge of theft, these same two defendants were found guilty and sentenced to the Indiana State Farm for a concurrent term of six months. Defendant Debora Jackson was found guilty of theft and visiting a common nuisance. Under the nuisance charge, Debora was fined $150.00. The court withheld further sentencing of Debora because she was pregnant. Defendants filed a timely motion to correct errors which was overruled. This appeal follows.

FACTS:

On July 18, 1974, Lora Lee Jellicoe, Cynthia Szalewski, James Johnson, and Kenneth McKesson departed from Mishawaka, Indiana, intending to hitchhike to Sedalia, Missouri for a rock concert. Upon reaching Peru, Indiana, the four were offered a ride in a pickup truck driven by one of the defendants. The defendants Mark A. Pruitt, Donald L. Jackson, and Debora Dillman Jackson transported the four hitchhikers to the Jacksons' residence where the group stayed the night. On the following day the defendants and the four hitchhikers boarded the pickup truck and drove toward Sedalia, Missouri.

During the course of their journey, the defendants occupied the front cab of the vehicle while the four guests sat on the open truck bed in the rear. The front and back of the truck were separated by a window, located on the back side of the cab.

On the road to Sedalia, additional hitchhikers possessing marijuana were given rides in the rear of the truck. The marijuana carried by the anonymous new riders was smoked by several persons. State witnesses Lora Lee Jellicoe, Ken McKesson, and Jim Johnson testified marijuana smoking was

prevalent in the rear of the truck; through their failure to observe, they were uncertain as to any marijuana usage in the cab area where the defendants sat. State witness Cynthia Szalewski testified that on the way to the concert marijuana was smoked in both the front and the back of the truck. She specifically recalled passing a marijuana cigarette through the passenger window to defendant Don Jackson who was seated in the cab. Each of the defendants denied any knowledge of the presence or use of marijuana as they traveled to the concert.

Arriving at the concert on July 19, 1974, the group split up for the festivities but reunited the next day for the trip home. Defendant Mark Pruitt rode in the rear of the truck for a short time after leaving the concert.

As to the presence of marijuana on the return trip, Lora Lee Jellicoe revealed that before boarding for home everyone was talking about some marijuana in a knapsack left in the truck by an earlier hitchhiker. Lora stated that after leaving the concert, no marijuana smoking occurred in the truck. In direct examination, Kenneth McKesson testified that in traveling to the concert the group picked up a stranger. He saw this person carry a red handkerchief wrapped around six or seven separately packaged plastic baggies filled with marijuana. On cross examination, Kenneth claimed he lacked any personal knowledge of the presence or use of marijuana on the return trip. James Johnson told of new hitchhikers who possessed marijuana being picked up as the group headed back to Indiana. These hitchhikers remained in the back of the truck at all times, and were dropped off sometime before the group reached Putnam County. Beyond this, he lacked personal knowledge of the usage or presence of marijuana on the truck.

Cynthia Szalewski's version of the journey home once again differed from the testimony of her companions. She stated an

earlier hitchhiker had left marijuana in the truck, and defendant Mark Pruitt knew this because he examined and displayed it to her before departing. According to Cynthia, marijuana was smoked by some hitchhikers shortly after leaving Sedalia but she was not aware of any other smoking after that time.

All of the defendants denied any knowledge of the presence or use of marijuana on the truck during the drive home.

During the morning of July 21, 1974, Pruitt parked the truck near a gasoline storage tank adjacent to a farmhouse in Putnam County. Pruitt took a tire tool and gas can from the rear of the vehicle and proceeded to knock the lock off the tank so he could fill his container. Pruitt acted alone; defendants Debora and Donald Jackson remained in the truck during the theft. After filling the container, Pruitt drove further down the road where he stopped a second time to pour the gasoline into the truck's tank.

Mrs. Jean Jones, a resident of the farm house near the storage tank, observed two persons leave a parked pickup truck and begin tampering with the pump, but was unable to describe them, since the tank blocked her view. She called the State Police after seeing a shiny substance resembling gasoline pour out of the tank.

Indiana State Trooper Lanny K. Fields subsequently located the pickup a short way down the road as Pruitt was getting back into the truck. He arrested all seven of the vehicle's occupants for theft. A later inventory of the truck's contents revealed a lock identified by the owner of the storage tank as similar to the lock on his pump. Four plastic bags containing marijuana were found inside the cab lodged behind the front seat. In the glove compartment three smoking pipes and one cigarette holder were discovered; each contained a residue of marijuana. One plastic bag of marijuana was also found in the rear area of the truck. All defendants denied any knowledge as to the presence of these items in the truck.

## ISSUES PRESENTED ON APPEAL:

I. Did the trial court err in overruling the defendants' Motion to Dismiss the Information charging them with maintaining a common nuisance?

II. Is IC 1971, 16-6-8-7 (Burns Code Ed.) unconstitutionally vague and overbroad?

III. Was there sufficient evidence to sustain the defendants' convictions for visiting a common nuisance?

IV. Was there sufficient evidence to sustain the defendants' convictions for theft?

## ISSUE I:

The defendants' first assignment of error concerns the trial court's overruling of the defendants' motion to dismiss the information charging defendants with maintaining a common nuisance.

Information CR. 74-222 charges:

". . . on or about the 21st day of July, A.D. 1974, at and in the County of Putnam, State of Indiana, did then and there unlawfully use a certain vehicle, to wit: a 1955 Chevrolet pickup truck automobile for the purpose of illegally keeping a certain dangerous drug, to wit: Cannabis."

The defendants alleged the information lacked certainty in appraising them of the charge, and moved to dismiss it. The trial court overruled the motion without explanation, and defendants preserved the alleged error for appeal.

Defendants complain of being misled by the uncertainty of Information CR. 74-222. They prepared to defend against the charge of "maintaining a common nuisance" but were found guilty of "visiting a common nuisance" instead. IC 1971, 16-6-8-7 (Burns Code Ed.) reads:

"Places used for keeping, selling or using dangerous drugs deemed a common nuisance.—Any store, shop, warehouse, dwelling house, apartment, building, vehicle, boat, aircraft, or any place whatever, which is used by any person for the purpose of illegally using any dangerous drug, or which is used for the illegal keeping or selling of the same,

shall be deemed a common nuisance. No person shall keep, or maintain such a common nuisance, nor frequent or visit such place knowing it to be used for any said purposes."

The standards for ascertaining the sufficiency of the charging affidavit were recently summarized in *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686, 690 as follows:

"In this state, the offense charged in the indictment must be stated with such certainty that the accused, the court, and the jury may determine the crime for which conviction is sought. IC 1971, 35-1-23-25 [*Burns' Ind. Stat. Ann.* § 9-1126 (1956 Repl.)]; *Thomas* v. *State* (1968), 251 Ind. 76, 238 N.E.2d 20; *rehearing denied;* See also *Noel* v. *State* (1966), 247 Ind. 426, 215 N.E.2d 539 *rehearing denied.* The defendant must be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime. Ind. Const. art. I, § 13; See *State* v. *Brown* (1935), 208 Ind. 562, 196 N.E. 696. However, certain details may be omitted and a motion to quash may properly be denied unless the indictment is so uncertain and indefinite that the nature of the charge cannot be ascertained. IC 1971, 35-1-23-26 [Burns' Ind. Stat. Ann. § 9-1127 (1956 Repl.)] *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N.E. 316 *rehearing denied.*"

The defendants and the trial court knew the prosecution was under IC 1971, 16-6-8-7 (Burns Code Ed.) because the statute was cited on the face of the charging document. However, there can be no question that the information charged defendants with "maintaining a common nuisance," and in no way intimated that they were charged with "visiting a common nuisance." They were charged with unlawfully using a pickup truck for the purpose of *keeping* a dangerous drug. From the statute it is clear that "keeping" and "maintaining" are roughly synonymous words describing one basic wrong that the State seeks to prohibit. On the other hand, "frequent" and "visit" are also generally synonymous, but do import a type of conduct different from "maintaining" or "keeping" a common nuisance. Thus two

distinct crimes are contained within this one statutory provision.

Further, "visiting a common nuisance" is not a lesser included offense of "maintaining a common nuisance." To be a lesser included offense, it must be such that it is impossible to commit the greater offense without first having committed the lesser offense. *Certain* v. *State* (1973), 261 Ind. 101, 300 N.E.2d 345; *Cook* v. *State* (1972), 258 Ind. 667, 284 N.E.2d 81.

In *Certain* v. *State, supra,* the Supreme Court listed the elements of "keeping a common nuisance" as: 1) using, 2) a place, 3) for keeping, selling, or using, 4) illegal, 5) narcotic drugs. From the statute, it is apparent that the elements of the crime of "visiting a common nuisance" are: 1) frequent or visit, 2) a place, 3) knowing it to be used for the selling, keeping, or using, 4) of any dangerous drug (as the terms are defined in the Act.)

It is clear that the above definition of the crime of "maintaining a common nuisance" implies that the defendant must have some control over the drugs that are illegally kept, sold, or used on the premises. "Visiting a common nuisance" has no such requirement, but only requires knowledge that the place involved is used for said purposes. On the other hand, presence of the defendant at a place so used is a necessary element of "visiting a common nuisance." There is no such requirement for the crime of "maintaining a common nuisance," as one can keep dangerous drugs at a place in violation of the statute without being physically present at that place. The statute contains two distinct crimes, neither of which is a lesser included offense of the other.

In the case at bar, the defendants filed a motion to dismiss the information for uncertainty as to what crime was charged. Since the State failed to amend the information pursuant to IC 1971, 35-3.1-1-5 (Burns Code Ed.), it must be assumed

that the State intended to charge the defendants with "keeping a common nuisance" and no more. The defendants based their defense on this charge, even to the point of calling as a witness Connie Snowberger for apparently the sole purpose of showing ownership of the truck and its contents. Such evidence would be irrelevant if the defendants were defending against the charge of "visiting a common nuisance," but it could be highly relevant in a charge of "maintaining a common nuisance" where control over the property is an important part of the crime. When the defendants were found guilty of a crime for which they were not charged, i.e., "visiting a common nuisance," their substantial rights were impaired, and thus the convictions on these charges cannot stand. *Bruce* v. *State* (1952), 230 Ind. 413, 104 N.E.2d 129.

Our finding in this regard is supported by the Supreme Court case of *Sanford* v. *State* (1971), 255 Ind. 542, 265 N.E.2d 701. There, a single statute was held to contain two distinct crimes, i.e., 1) forgery, and 2) uttering a forged instrument. The defendant Sanford was charged with forgery, but found guilty of uttering a forged instrument. The court found that the verdict and the judgment entered thereon were contrary to law, even though the defendant raised the question for the first time on appeal.

Finally, we believe the case at bar is clearly distinguishable from *Belcher* v. *State* (1974), 162 Ind. App. 411, 319 N.E.2d 658. In *Belcher,* the defendant pleaded guilty in open court to a charge of uttering a forged instrument. However, the order book entry showed that he was guilty of forgery. This court held that such an error was not controlled by the *Sanford* case, as the entry was merely a technical error which did not in any way harm the defendant. The court entered an order correcting the judgment so as to read guilty of uttering a forged instrument.

We do not feel that the error in the case at bar can be construed as merely technical, especially where there is a

question of guilt as opposed to a mere guilty plea. Here, we have no indication as to defendants' guilt on the charge of maintaining a common nuisance. Defendants were substantially prejudiced by this error, and as such their convictions of visiting a common nuisance must be reversed.

In light of this holding, we need not consider defendants' second and third assignments of error. *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N.E.2d 127, 131.

## ISSUE II:

Defendants' last assignment of error concerns the sufficiency of the evidence to sustain the convictions for theft. Donald Jackson and Debora Dillman Jackson contend that there is no evidence of their participation in the crime other than their presence in the front of the truck during the time in question. Mark Pruitt challenges the conviction on the grounds that there is no evidence that any gasoline was actually stolen, since the owner was unable to say how much gasoline was missing. There was no gauge on the tank.

The standard for reviewing questions of this nature was set forth in *Atkins* v. *State* (1974), 159 Ind. App. 387, 307 N.E.2d 73, 76 as follows:

"When reviewing the sufficiency of the evidence, this Court cannot weigh the evidence nor determine the credibility of witnesses, but may look only to the evidence and reasonable inferences therefrom most favorable to the State. A conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Walker* v. *State* (1973), [155] Ind. App. [404], 293 N.E.2d 35; *Shank* v. *State* (1972), [154] Ind. App. [147], 289 N.E.2d 315. Circumstantial evidence is subject to the same general review. *Walker* v. *State, supra, Miller* v. *State* (1972), [153] Ind. App. [54], 285 N.E.2d 843; *Taylor* v. *State* (1972), [259] Ind. [25], 284 N.E.2d 775. The specific test for the examination of circumstantial evidence requires that we view the evidence, not for the purpose of determining whether or not it is adequate

to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom which tends to support the finding of the trial court. *McAfee* v. *State* (1973), [259] Ind. [687], 291 N.E.2d 554, 556; *Glover* v. *State* (1973), [157] Ind. App. [532], 300 N.E.2d 902."

As to defendant Pruitt, the evidence is clear that on the morning of July 21, 1974, he broke the lock off of a gasoline storage tank owned by Raymond Jones. He proceeded to pull a gasoline can from the rear of the truck and fill it with fuel. From a nearby farm house, Mrs. Jean Jones observed the event and called the State Police when a shiny fluid resembling gasoline poured out of the tank. Pruitt cruised further down the road before stopping to empty the can into the truck's tank. Indiana State Trooper Lanny Fields arrived on the scene as Pruitt was returning to the driver's seat. On a later search of the pickup truck, the police found the broken lock from Mr. Jones' pump.

This evidence is clearly sufficient to uphold a conviction for theft. Inasmuch as the charge was for theft of property worth under $100.00, the amount of the theft is irrelevant, so long as some property has been stolen. That was clearly shown in this case.

A different problem arises when the convictions of Debora and Donald Jackson are considered. Their convictions must rest upon IC 1971, 35-1-29-1 (Burns Code Ed.) which states:

"Accessory before the fact.—Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or information, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

To sustain a conviction for aiding and abetting, the Jacksons need not have committed each element of theft. *Cline* v.

*State* (1969), 253 Ind. 264, 252 N.E.2d 793. It will suffice if the trier of fact finds they aided Mark Pruitt in the commission of the crime. *Goodlow* v. *State* (1963), 260 Ind. 552, 297 N.E.2d 803.

On the other hand, mere presence at the scene of the crime does not establish "aiding." *Guetling* v. *State* (1926), 198 Ind. 718, 153 N.E. 765. Companionship with the criminal actor is not synonymous with encouragement of the crime. *Amaro* v. *State* (1968), 251 Ind. 88, 239 N.E.2d 394.

All circumstances considered, the final question involves the link between silence and acquiescence. *Pace* v. *State* (1967), 248 Ind. 146, 224 N.E.2d 312 provides the closest analogy to an answer. Pace drove his family and a friend to LaPorte, Indiana. Along the way, a hitchhiker was picked up; Pace's friend thereafter robbed this rider while the rest of the passengers remained silent. The court's discussion of acquiescence is especially pertinent and follows in full.

> "The main question presented in the facts at bar is what evidence beyond the mere presence of a person at the scene of a crime is sufficient to sustain a connection as an accessory before the fact? This court has previously stated that negative acquiescence is not enough to constitute a person guilty of aiding and abetting the commission of a crime. *Mattingly* v. *State* (1952), 230 Ind. 431, 104 N.E.2d 721. Consequently, this court has always looked for affirmative conduct either in the form of acts or words from which reasonable inferences of a common design or purpose to effect the commission of a crime might be drawn. See *Sage* v. *State* (1890), 127 Ind. 15, 30, 26 N.E. 667; *Peats* v. *State* (1938), 213 Ind. 560, 574, 12 N.E.2d 270. However, it has been further stated by this court in *Mobley* v. *State* (1949), 227 Ind. 335, 343, 85 N.E.2d 489, [492]:
>> '* * * in the absence of anything in his conduct showing a design to encourage, incite, aid, abet or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom

that he assented to the commission of the crime, lent his countenance and approval thereto, and thereby aided and abetted it * * *'

[*Mobley* v. *State* dealt with a mother's aiding and abetting the physical abuse of her child by acquiescing in the step-father's sadistic beatings of the infant.]

"It should be noted that the court in *Mobley, supra,* in stating that a failure to oppose the commission of a crime may be considered as aiding and abetting, impliedly qualified this statement wherein the court stated at p. 343, [85 N.E.2d at p. 492] :

'This, it seems to us, is particularly true when the person who fails to interfere owes a duty to protect as a parent owes to a child.'

"In other cases relying on *Mobley, supra,* there has normally been some course of conduct of an affirmative nature to connect the defendant with the crime. See *Cotton* v. *State* (1965), 247 Ind. 56, 211 N.E.2d 158 (principal not abetting).

"In the facts at bar we have found no evidence or reasonable inferences therefrom which might demonstrate that the appellant aided and abetted in the alleged crime. While he was driving the car, nothing was said nor did he act in any manner to indicate his approval or countenance of the robbery. While there is evidence from which a jury might reasonably infer that he knew the crime was being committed, his situation was not one which would demonstrate a duty to oppose it. *Mobley, supra,* [227 Ind.] p. 343, [85 N.E.2d 489.] We do not intend to draw any hard and fast rules in this area of the law. Each case must be reviewed on its own facts; in so doing we hold that the verdict is not sustained by substantial evidence of probative value and is therefore contrary to law."

The appellants, Donald and Debora Jackson were only passive guests in the truck operated by the appellant, Pruitt. They were many miles from home and without any control over the truck and its operation.

There is no evidence in the record that appellants Donald and Debora Jackson did anything to aid or abet the larceny of the gasoline.

We are constrained to hold that there was not sufficient evidence to sustain a conviction of said appellants on the charge of theft.

## DECISION:

The conviction of Mark Pruitt for theft is affirmed.

The conviction of Debora Dillman Jackson and Donald Jackson for theft is reversed. The conviction of Mark Pruitt, Debora Dillman Jackson, and Donald Jackson for visiting a common nuisance is reversed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 333 N.E.2d 874.