Thomas K. Hancock v. State of Indiana.
[No. 1-1075A182. Filed April 13, 1976. Rehearing denied May 18, 1976.

Transfer denied September 22, 1976.]

*David P. Murphy, Wolf & Robak,* of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Thomas Hancock was charged with and convicted, in a trial to the court, of the crime of second degree burglary. Hancock now appeals that conviction and the overruling of his motion to correct errors, raising the following issues for our consideration:

1) Whether Hancock was denied a fair trial by the failure of the State to comply with discovery motions.

2) Whether it was error for the trial court to overrule Hancock's Motion to Suppress Evidence, and to fail to issue a "protective order."

3) Whether Hancock was denied a fair trial by the action of the court in instructing the Deputy Prosecuting Attorney as to the proper laying of a foundation for certain items of evidence.

4) Whether various items of evidence were properly admitted.

5) Whether the verdict was supported by sufficient evidence.

6) Whether the verdict was contrary to evidence given at trial.

## FACTS:

The facts most favorable to the State establish that at 5:30 A.M. on November 21, 1974, Deputy Sheriff James Hoffman observed that three windows in the office building of Dr: R. W. Kuhn had been broken. After additional manpower arrived at the scene, Hoffman and Sheriff Grass entered the building to conduct a search. Upon entering the premises, Dr. Kuhn was telephoned and he arrived within fifteen (15) minutes. These three persons surveyed the office and noted medicines strewn about, pry-marks on storage cabinets which were open, a bag containing medicines near an entrance, and a screwdriver on the floor near the medicine cabinets. Dr. Kuhn stated that all exterior doors were securely fastened at his last departure.

During this initial investigation of the office, Officer Hoffman went to the attic and searched that area with the aid of a flashlight. Although Hoffman searched the attic for approximately five (5) minutes, he saw no one.

At approximately 12:15 P.M. the same day, Dr. Kuhn was at his office, and was informed by his nurses that noises had been heard emanating from the attic area. Dr. Kuhn decided to investigate, and proceeded to the attic. While in the attic, Dr. Kuhn discovered three bottles of medicine which were normally stored downstairs, and a pair of shoes which were not his own. Also found were two chisels and a screwdriver which were not Dr. Kuhn's property. After spending several minutes in the attic, Dr. Kuhn turned from a window which he was repairing and observed Hancock approaching him from the far end of the room.

Dr. Kuhn and Hancock scuffled near the stairwell, and Hancock eventually broke free of Dr. Kuhn's grasp and either jumped or fell down the steps. Dr. Kuhn gave chase and pursued Hancock out of the building to a point some 150 yards from the office where Hancock concealed himself in a weed patch. Hancock was eventually removed from this area

after it was surrounded by Dr. Kuhn and several citizen volunteers who responded to Dr. Kuhn's shouts for help. When apprehended, Hancock was without shoes, and was covered with soot and dust.

## I.

Hancock vigorously contends that he was denied a fair trial because the State failed to fully respond to his requests for the production of evidence. Hancock asserts that his motions to produce evidence were timely and otherwise adequate, and that the State's conduct amounts to a suppression of evidence which he considers exculpatory.

The item of evidence about which Hancock's argument revolves is a "miscellaneous crime report" which was prepared by Officer Hoffman after his investigation at Dr. Kuhn's office. The allegedly exculpatory portion of the report is the conclusion of Officer Hoffman that

"It is believed that the burglars left the building through the front door as I checked the back side of the building. At this time we believe that all items were recovered."

Well before trial, Hancock's request for the production of all memoranda and reports bearing "upon [his] guilt or innocence" was granted. In response thereto, the State produced a report prepared by Sheriff Grass and a statement by Dr. Kuhn.

During the cross-examination of Officer Hoffman it was discovered that although Hoffman denied making a formal report he had prepared some "notes" on the investigation which were not disclosed to Hancock. At this point, Hancock asserted his discovery order and requested the notes, as well as all police reports prepared within the prior twenty-four (24) months which dealt with burglaries at the Kuhn office. When these police reports were finally produced, over the prosecutor's objections, it was found that one of the three was the above-noted "miscellaneous report" which was prepared by Hoffman and kept in the police files.

Hancock ultimately introduced the report into evidence, and at no point was surprise claimed nor a continuance requested.

We agree with Hancock that the State is under a continuing duty to disclose exculpatory evidence. Also, we agree that this duty would necessarily prohibit the suppression or incomplete release of such information. *See generally, Fair* v. *State* (1969), 252 Ind. 494, 250 N.E.2d 774; *Birkla* v. *State* (1975), 263 Ind. 37, 323 N.E.2d 645; *White* v. *State* (1975), 263 Ind. 302, 330 N.E.2d 84.

It is our opinion that although the crime report was produced under somewhat questionable circumstances,[1] the failure by the State to initially reveal said report is not reversible error.

The report was finally produced after several days of trial. However, at the time of its production, Hancock did not seek a continuance due to surprise or newly discovered evidence. Thus, while Hancock cites the great importance of the report, it evidently had no great impact upon his preparation for the remaining portion of the trial.

Further, Hancock was not denied the use of the report for *his* presentation of evidence. Thus, the report *was* presented at trial, and there was an opportunity to question both its contents and its author. Therefore, given the facts of this case, we hold that Hancock was not denied a fair trial, and there is no reversible error.

We wish to emphasize that our holding on this issue should not be taken as an endorsement of prosecutorial laxity or misconduct. We shall continue to give such allegations strict review, and we encourage the prompt and complete disclosure of all evidence favorable to a defendant.

---

1. The conduct of the officer who prepared the report is particularly suspect since he denied ever making such a report of the incident.

## II.

Hancock next argues that the trial court erred in overruling his motion to suppress evidence, and in not issuing a "protective order" with regard to the same evidence. Hancock contends that the evidence should have been suppressed since it was not connected to him, and urges the protective order as the only proper procedure to exclude the introduction of irrelevant and prejudicial testimonial evidence.

While it is clear from Hancock's argument that his initial motion to suppress was directed toward both physical and testimonial evidence, the bulk of the argument is directed to a consideration of the applicability of a motion in limine. Much reliance is placed on *Burrus* v. *Silhavy* (1973), 155 Ind. App. 558, 293 N.E.2d 794.

After reviewing the cases cited, and the general nature and purpose of such a motion we hold that the "protective order" was properly denied. This motion is intended to exclude prejudicial matter; to prevent even reference to such evidence. This purpose is based on the recognition that admonitions by the court may, in fact, fail to overcome the effect of improper comment.

We feel, however, that the purposes or reasons for requesting and granting such a motion are greatly, if not completely, diminished where, as here, the trial is to the court. *Baldwin* v. *Inter City Contractors Service, Inc.* (1973), 156 Ind. App. 497, 297 N.E.2d 831. We feel that a trial judge is fully capable of dealing with objections to testimony during the trial, and, because of his training and experience, is able to reject or dismiss improper testimony. We, therefore, hold that the motion in limine was properly denied.

From Hancock's citation of authority, it appears that his objection to the overruling of his motion to suppress physical evidence is based on an incomplete chain of custody. Hancock relies upon *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, 654, which states

". . . If one link of the chain is *entirely* missing, the exhibit cannot be introduced or made the basis for the testimony or the report of an expert or officer. If the testimony of the state's expert witnesses as to the narcotic content of the white powder is sought to be offered at trial, then the state should be prepared to establish a 'chain of evidence' by either producing police custody records showing the same or by testimony of witnesses. This is not a new rule in Indiana but rather a shorthand recognition of the well-established evidentiary requirement that a foundation must be laid connecting the evidence with the defendant before it is admissible at the trial . . ." (Original emphasis.)

The evidence to which Hancock objects is all physical evidence, consisting of screwdrivers and other tools, medicine bottles, a duffle bag and other items which were found in Dr. Kuhn's office prior to Hancock's apprehension. Hancock first asserts that inasmuch as no fingerprints were found on any of the items they are not connected to him. Second, it is argued that laboratory tests conducted to discover glass fragments in the offered gloves and shoes were inconclusive or negative, and that such items of evidence were therefore improper.

Hancock is correct that none of the items here objected to were found in his possession, and that no fingerprints link him directly to the evidence. However, it is also true that Hancock does not dispute that all of the items (except the gloves) were found in the office the day of the crime, and were properly accounted for from that time until trial. Thus, while the items were not tied to Hancock's personal possession, they were clearly connected to the office where the break-in had occurred and where Hancock was first discovered. We conclude that the offered evidence was sufficiently "connected" to Hancock, and that the motion to suppress was properly denied. *Elliott* v. *State* (1972), 258 Ind. 92, 279 N.E.2d 207; *Ballard* v. *State* (1974), 262 Ind. 482, 318 N.E.2d 798.

Given Hancock's unexplained presence, the disarray of the office, the condition of the medicine storage cabinets and the

relation between the marks on various doors and the tools found, we believe the evidence was admissible as bearing on, at least, intent and motive. *Elliott* v. *State, supra; McPhearson* v. *State* (1969), 253 Ind. 254, 253 N.E.2d 226; *Combs* v. *State* (1973), 260 Ind. 294, 295 N.E.2d 366; *Atkins* v. *State* (1974), 159 Ind. App. 387, 307 N.E.2d 73. Hancock's various arguments in this regard more properly concern the weight to be given such circumstantial evidence.

## III.

The third issue to be considered is whether Hancock was denied a fair trial when the trial judge gave brief instructions to one of the prosecuting attorneys on the proper laying of a foundation for the introduction of evidence. Specifically, it is contended that the trial court became an advocate for the State when, off the record, it advised the deputy prosecuting attorney concerning the introduction into evidence of State's Exhibit No. 8, a green duffle bag.

The State had made several unsuccessful attempts to introduce the bag before the trial court interceded. From the court's statement of the discussion which took place off the record, it appears that the court informed the prosecution that it was not necessary to show a chain of custody where the exact item can be identified as the one originally seized. The briefs of the parties also establish that Hancock admits there was no deliberate attempt to prejudice him, and that the State had intended to re-introduce the evidence regardless of the court's conduct.

We find that it was not reversible error for the trial court to deny Hancock's motion for mistrial, which was based on the alleged prejudicial advocacy of the judge.

First, there was no jury which could have been influenced by the court's suggestions. Second, Hancock does not allege that the bag was a crucial or particularly influential item of

evidence. Third, the incident was an isolated one, and there is no indication of bias or prejudice on the part of the judge. Finally, even if the bag had not been introduced, there was ample testimonial evidence that a green bag had been found at the doctor's office.

In light of the above, and all of the other evidence, we do not find Hancock's argument persuasive. *See generally, Kennedy* v. *State* (1972), 258 Ind. 211, 280 N.E.2d 611; *Vedron* v. *State* (1975), 163 Ind. App. 28, 321 N.E.2d 847; *Hopkins* v. *State* (1975), 163 Ind. App. 276, 323 N.E.2d 232.

## IV.

Hancock's next argument is that the trial court erred in admitting into evidence several items of evidence. In all, Hancock objects to ten (10) exhibits, most of which were found in the doctor's office.

Hancock raises two separate arguments within this issue. First, it is contended that certain photographs are not accurate, that they contain irrelevant material, and that they are misleading. Second, as to the other items of evidence, it is argued that no proper foundation was laid in that the evidence was not connected to Hancock, and that no chain of custody was shown.

Hancock admits that the admission of a photograph is a matter within the discretion of the trial court, *Hubble* v. *State* (1973), 260 Ind. 655, 299 N.E.2d 612, and we find that such discretion has not been abused in the case at bar.

The photographs depict only what was revealed by testimony. It is true that the photograph showing the mutilated door contains some extraneous matters. However, when the photograph is considered in light of the testimony given on the same subject, we feel that the contents of the photograph were adequately explained, and any objection goes to weight rather than admissibility. As to the other photos, Hancock does not inform us as to how they

were misleading, inaccurate or otherwise prejudicial, and we find no error in their admission into evidence.

With regard to the other items of evidence, we have considered each separately and now conclude that all, except one, were properly admitted. We will not discuss each item separately, but direct our comments to the evidence as a whole. Generally, we consider our comments under Section II, *supra*, with regard to connecting Hancock with the evidence, to be applicable. All of the items, except the gloves, were found in the office where Hancock was discovered, and we find each item was accounted for from seizure until trial. We therefore hold the exhibits were admissible as circumstantial evidence of Hancock's guilt.

As concerns the gloves which were found in the weed patch where Hancock was apprehended, we find no nexus between them and Hancock. The gloves were not seen in Hancock's possession; they were not seen being discarded by Hancock; and there was no evidence that Hancock had previously been in the same patch of weeds. Thus, the gloves, unlike the other items, were connected neither to Hancock nor the scene of the burglary.

We do not, however, hold that the above error is reversible error. In light of the other evidence at trial, we find that the admission of the gloves was not decisive of Hancock's guilt, and, therefore, conclude that a reversal of this cause is not warranted. *Kramer* v. *State* (1974), 161 Ind. App. 619, 317 N.E.2d 203; *Hendrickson* v. *State* (1975), 163 Ind. App. 580, 325 N.E.2d 499; *Koonce* v. *State* (1975), 263 Ind. 5, 323 N.E.2d 219.

## V.

Hancock's fifth argument is that his conviction is not sustained by sufficient evidence. Of course, in reviewing this question we consider only that evidence most favorable to the State, and must affirm if there is substantive evidence to support the trial court's finding

of guilt. *Scruggs* v. *State* (1974), 161 Ind. App. 672, 317 N.E.2d 800. Hancock urges that we must, to affirm, exclude every reasonable hypothesis of his innocence, citing *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6. We note, however, that the *Easton* court, at page 344 of 248 Ind., stated

> ". . . While the above rule has been held to be for the guidance of the trial court and on appeal it is not the province or right of this Court to weigh the evidence, however, it is the duty of this Court to examine the record of the evidence to determine whether there was sufficient evidence substantial in character to support the court's finding on each of the issuable facts or elements of the crime charged beyond a reasonable doubt. . . ."

We find that Hancock's conviction is supported by sufficient evidence. Hancock was discovered in the attic of an office which had been unlawfully entered just hours before. In the attic where he was discovered were found medicines of the type normally kept in locked cabinets downstairs, and chisels and screwdrivers. The medicines were Dr. Kuhn's, the tools were not. The office was in disarray, and medicine cabinets had been pried open with various pointed tools. There was testimony that some of the tools fit the marks on certain doors, and that some of the pry-marks were fresh.

Hancock did not explain his presence when discovered, and attempted to flee when Dr. Kuhn confronted him. In this respect, we note that we do not find Hancock's authority persuasive. In the cases cited by appellant, the flight was considered an equivocal or ambiguous act mainly because of the absence of other incriminating evidence. Here, however, we have other evidence of a breaking and entering and an attempt to find and remove medicines in addition to concealment and flight.

Thus, we believe that the trial court could have reasonably inferred that Hancock broke and entered the office with the intent to commit a felony-theft. *Cox* v. *State* (1975), 167 Ind. App. 168, 338 N.E.2d 319, 323.

674

## VI.

From the above, it follows that we also find that the conviction was not contrary to law.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 345 N.E.2d 244.