RONALD JAY DAMRELL v. STATE OF INDIANA.

[No. 1-476A63. Filed August 17, 1976.]

*Keith A. Dilworth,* Public Defender, of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Defendant-appellant Ronald Jay Damrell (hereinafter Damrell) appeals from the judgment of the trial court entered on the jury's verdict of guilty of committing the crime of theft from the person.[1]

We affirm.

## FACTS

The facts necessary for our disposition of this appeal are as follows: On February 20, 1975, at approximately 7:30 P.M., Damrell went to the Richmond police station, having heard they were looking for him concerning an alleged robbery committed on February 6, 1975.

The victim of the robbery, Gerald Sanders, testified that early in the morning of February 6, 1975, he offered to drive a man home whom he had met at Jenning's Restaurant. He

---

1. IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Code Ed.)

further testified that the man pulled out a "shiny object" and demanded his money. The passenger got away with approximately $180.00. Sanders was unable at trial to identify Damrell as the man who had robbed him.

Vera Damrell, ex-wife of defendant, went to the police station around 5:50 P.M. on February 20, 1975, and told them that Damrell, her ex-husband, had admitted to her that it was he who had robbed Sanders.

Following Damrell's arrival at the police station he was placed under arrest. Subsequently, he signed a "Waiver of Rights Form" and gave a confession. Damrell's confession was challenged as involuntary during a Motion to Suppress and was objected to at trial.

## ISSUES

1. Whether the trial court correctly overruled Damrell's objection to the testimony of his former wife.

2. Whether the trial court correctly overruled Damrell's Motion to Suppress his written confession and objection to the waiver of rights form.

3. Whether the trial court correctly refused defendant's tendered instruction on confessions.

4. Whether the jury's verdict is supported by sufficient evidence.

## DECISION

ISSUE ONE:

Damrell argues that the trial court erred in admitting over his objection of privileged communication testimony from his ex-wife Vera.

The record discloses that Damrell and Vera were divorced on January 17, 1975. The crime was perpetrated on February 6, 1975, and Vera's testimony reveals that Damrell's inculpatory statements were made to her on February 6, 1975, at approximately 5:00 P.M.

IC 1971, 34-1-14-5, Ind. Ann. Stat. § 2-1714 (Burns 1946 Repl.) provides in relevant part the following:

"The following persons shall not be competent witnesses:

\* \* \*

*Sixth. Husband and wife,* as to communications made to each other." (Our emphasis.)

Damrell urges us to engraft an exception to this rule by holding that communications made between ex-spouses, who are living together with a possible eye toward reconciliation, should likewise be entitled to assert the privilege. We can see no reason in policy, or in our reading of existing Indiana cases on the husband-wife privilege, to extend the rule to that degree urged upon us by Damrell. We hold that inculpatory statements made between ex-spouses *after* their relationship has been terminated by divorce does not fall within the husband-wife privilege as stated in IC 1971, 34-1-14-5, *supra.*

ISSUE TWO:

Damrell argues that the trial court committed reversible error by overruling his Motion to Suppress his confession because it was involuntary, and his objection to the State's Waiver of Rights form because the State allegedly did not lay a proper foundation.

Since both parts of Damrell's Issue Two have common roots, whether the confession was knowingly and intelligently given viewing the totality of the circumstances, we shall deal with both parts in one discussion.

The relevant circumstances surrounding Damrell's confession were as follows: Damrell, on direct examination, testified that the day he went to the Richmond police station he had been drinking heavily and had taken four speed pills at approximately 2:30 P.M. He testified that he was not given his *Miranda* warnings before Detective Tyra began interrogating him about the crime. Damrell also testified that he was not sure whether he signed a Waiver of Rights before making

his statement, and Detective Tyra told him that he had a recording whereby his ex-wife, Vera, stated that he had committed the crime. Damrell further testified that Detective Tyra said he would "burn him" unless he told how he had committed the crime.

On cross-examination Damrell testified that he was not intoxicated, but was under the influence of drugs. He testified that he understood what Detective Tyra was saying to him. He testified that it was his signature which appeared on the Waiver of Rights, and it was possible that Detective Tyra had read it to him. He testified that he had consumed most of the liquor and all of the drugs prior to 2:30 P.M. on February 20, 1975, and he gave the statement around 8:20 P.M. of the same day. He initialed his confession four times to indicate the mistakes which had been made. Damrell further testified that Detective Tyra read his statement back to him before he signed it.

Detective Tyra testified that Damrell was given a copy of *Miranda* warnings which were read to him and he signed, after indicating that he had no questions. He testified that Damrell had no problems communicating with him and his coordination was fine. He testified that he did inform Damrell about the statement his ex-wife Vera had made, and it was possible that this evidence would be sufficient to burn him. He further testified that Damrell's statement was read back to him in the presence of Lieutenant Goodwin and he signed it. Detective Tyra further testified that following Damrell's statement he told him he would check with the prosecutor to try and determine what the charge against him would be.

IC 1971, 35-5-5-1 (Burns Code Ed.) provides:

"In any criminal prosecution brought by the state of Indiana, a confession, as defined in section (5) [35-5-5-5] hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence and hearing of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made,

it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."

Some of the factors which a trial court is free to consider in resolving the issue of voluntariness are listed in IC 1971, 35-5-5-2 *infra:*

"The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including but not limited to (1) the time elapsing between the arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession."

The record, as can be seen from our above discussion of the testimony the trial court had before it in considering Damrell's Motion to Suppress, was conflicting. Although conflicting, we are of the opinion that the trial court's finding that Damrell's confession was voluntarily made was based on substantial evidence. This court will not disturb a trial court's ruling on the admissibility of a confession when that ruling is based on substantial, though conflicting, evidence. *Riggs* v. *State* (1976), 264 Ind. 263, 342 N.E.2d 838, 843; *Sotelo* v. *State* (1976), 264 Ind. 298, 342 N.E.2d 844, 848. Also, it should be noted that when a movant challenges the voluntariness of his confession alleging that he was under the influence of drugs, he must adduce

testimony as to the nature of the drugs. Before we could reverse on this ground, the record must disclose that the drugs consumed were of the kind and quantity as would tend to render a confession involuntary. *Layton* v. *State* (1973), 261 Ind. 251, 301 N.E.2d 633. Damrell did not make this showing.

ISSUE THREE:

Damrell argues that the trial court erred in refusing his tendered instruction number 2 on confessions.

The record discloses that the trial court adopted Damrell's tendered instruction number 1, as the court's final instruction number 17, which instructed the jury on voluntariness and told them they were free to give such weight to the confession as the circumstances warranted.

We are of the opinion that the substance of the instruction which Damrell tendered and was refused by the trial court was adequately covered by final instruction number 17 which was read to the jury.

A trial court does not err by refusing to give an instruction the substance of which is substantially covered by another instruction. *Patterson* v. *State* (1974), Ind. App. 314 N.E.2d 92, 96-97, and cases cited therein. The fact that the tendered instruction dealt with the subject of confessions does not require a different result. *Wilson* v. *State* (1966), 247 Ind. 454, 217 N.E.2d 147, 152.

ISSUE FOUR:

Damrell argues that there was insufficient evidence to warrant his conviction.

When an appeal is perfected challenging the sufficiency of the evidence to convict, our Supreme Court in the case of *Pulliam* v. *State* (1976), 264 Ind. 381, 345 N.E.2d 229, 240, stated our established standard of review as follows:

"It is well-established that this court, in determining the sufficiency of evidence, does not judge the credibility of witnesses nor weigh evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt." (Citation omitted). See also, *Hancock* v. *State* (1976), 168 Ind. App. 663, 345 N.E.2d 244, 250.

The record reveals the evidence most favorable to the State to be as follows: Sanders testified that an unidentified man who he had offered to give a ride home from Jenning's Restaurant robbed him in the early morning hours of February 6, 1975. Samuel Taschlog testified that he had seen Damrell in Jenning's Restaurant during the morning of February 6, 1975. Vera, appellant's ex-wife, testified that Damrell told her he had robbed Sanders. Finally, Damrell confessed to having committed the crime to Detective Tyra.

We hold that the above testimony was sufficient to allow the jury to find beyond a reasonable doubt that Damrell had committed the crime with which he was charged.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 855.