## MICHAEL MCPHERSON *v.* STATE OF INDIANA

[No. 2-1077A410. Filed December 20, 1978. Rehearing denied
January 18, 1979. Transfer denied April 3, 1979.]

Bruce A. Boje, Castor, Richards, Adams & Boje, of Noblesville, for appellant.

Theodore L. Sendak, Attorney General of Indiana, Robert J. Black, Deputy Attorney General, for appellee.

MILLER, J. — After trial by jury Defendant-appellant, Michael McPherson, was found guilty as charged of first degree burglary[1] and assault and battery with intent to commit a felony (first degree burglary)[2].

We affirm.

The evidence most favorable to the State shows that during the afternoon of August 6, 1974, McPherson and his accomplice, Robert Sexton, broke into the home of Mrs. Coretta Black, located in Greenfield, Indiana, gaining entrance by forcing a screen on a second story window. Mrs. Black returned home to find the Defendant in her kitchen. After several seconds had elapsed, the Defendant fled out the back door of the kitchen, striking Mrs. Black in the shoulder and thereby knocking her down and injuring her. Mrs. Black immediately phoned the police, giving a detailed description of the Defendant and of a small box containing silver coins belonging to her which she had observed in his hand.

A short time later, the pilot of an airplane searching the vicinity on behalf of the police advised them that he had spotted a man fitting the Defendant's description approximately one mile from the scene of the crime. Defendant was apprehended, arrested, and advised of his rights.

---

1. IC 35-13-4-4, Repealed. For current version see IC 35-43-2-1.
2. IC 35-1-54-3, Repealed. See IC 35-42-2-1 (for current "Battery" statute).

He still had Mrs. Black's coin box in his possession. After being apprised of his rights a second and third time in the deputy's room of the Hancock County Jail, Defendant made a written confession.

Defendant raises the following issues on appeal:

(1)   Did the trial court err in failing to grant his motions for mistrial during *voir dire* and during trial?

(2)   Did the court err in denying his motion for special *venire* and motion for individual selection of jurors?

(3)   Did the court err in overruling his motion to suppress his confession and in admitting same at trial?

(4)   Did the court err in refusing to admit certain defense exhibits, consisting of:

(a)   a written statement made by McPherson's accomplice;

(b)   certified copies of the Hancock County Criminal and Juvenile dockets relating to the accomplice's guilty plea;

(c)   a copy of the accomplice's plea negotiation agreement?

(5)   Did the court err in admitting the State's exhibits consisting of:

(a)   an aerial photograph of the area surrounding the scene of the crime;

(b)   copies of the court's order book entries made in the case at issue showing Defendant's failure to appear at his first trial?

(6)   Did the court err in giving court's final instructions numbered 28 and 35 regarding flight and possible verdicts?

I.   *Motions for Mistrial-Prosecutorial Misconduct.*

The Defendant first argues that he was irreparably prejudiced by certain terminology used by the prosecutor during *voir dire.* He alleges his objection to the prosecutor's statement was sustained by the court, but the court refused to admonish the jury thereafter, whereupon the Defendant moved for a mistrial which was overruled. The Defendant failed in his Motion to Correct Errors and in his Brief to specify the term or statement which he found objectionable, and furthermore, failed to specify how or why it was pre-

judicial. It is the duty of the Defendant to sufficiently discuss objections in his Brief, and to cite authorities thereon. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). We will not search the record to discover errors not properly presented or speculate as to what comment the Defendant is referring or why he considers it harmful. Accordingly, the issue is waived. *Macken v. City of Evansville* (1977), 173 Ind.App. 60, 362 N.E.2d 202, *Stevenson v. State* (1974), 162 Ind.App. 222, 318 N.E.2d 573, *Brune v. State* (1976), 168 Ind.App. 202, 342 N.E.2d 637.

Defendant also claims he moved for mistrial on three separate occasions, alleging prosecutorial misconduct during direct examination of a State's witness. Again, however, Defendant has failed to set out the specific nature of the alleged misconduct, his objections thereto or the court's ruling, although he indicates that the court admonished the jury to disregard some answers of the witness. Defendant has totally failed to make "a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." AP. 8.3(A)(7), nor does he indicate in what manner he was prejudiced. This issue is waived, *Brune, supra.*

## II.  *Jury Selection.*

Defendant's second contention is that the trial court erred by not granting his Motion for Special *Venire,* wherein he requested that the jury panel be selected from people who, like himself, were not registered to vote. He argues that his right to trial by an impartial jury of his peers, as guaranteed by the Constitutions of the United States and of the State of Indiana, was compromised by the exclusion of unregistered voters pursuant to IC 33-4-5-7, which requires jurors to be registered voters in the county where the trial is to be held. Our Supreme Court aptly addressed the identical argument in *Baum v. State* (1976), 264 Ind. 421, 345 N.E.2d 831, 833 wherein it held that exclusion of jurors who were not registered voters did not constitute a denial of defendant's constitutional rights, stating:

> "We are not cognizant of any prejudice in our society against those persons who elect not to participate in the election processes which conceivably could impart jury bias against an accused who happened to be among them."

Defendant also filed a motion for the selection of each juror individually, outside the presence of the other prospective jurors, arguing that the "inflammatory" nature of the case could elicit emotional responses on *voir dire* which had the potential of influencing other prospective jurors and affecting their ability to consider the evidence fairly.

The trial court has wide discretion in arranging and directing the manner of conducting the impanelling of jurors. *Cochran v. State* (1978), 269 Ind. 157, 378 N.E.2d 868. We find no abuse of discretion by the court in conducting *voir dire* in its usual manner. The Defendant has cited no authority in support of his request for a departure from the court's normal jury selection procedure, nor has he demonstrated how this case is more "inflammatory" than any other case in which the victim is injured during the commission of a crime. Furthermore, he has failed to support his assertion that the conduct of the *voir dire* inflamed the prospective jurors or prejudiced him in any way. Those excerpts of the *voir dire* examination included in the record on appeal do not reveal anything which might conceivably inflame the potential jurors. In this situation, it is the responsibility of the Defendant to provide us with a record showing the basis of his complaint. Failure to provide such record constitutes waiver of the issue. *Cochran, supra.*

### III. *Motion to Suppress Confession.*

Defendant next alleges that the trial court erred in admitting his written confession and in overruling his earlier motion to suppress. He maintains that the State failed to prove the confession was given voluntarily and the waiver of rights was knowingly and intelligently signed, in that the Defendant was under the influence of drugs.

Evidence at the motion to suppress hearing revealed that the Defendant was apprised of his *Miranda* rights on three separate occasions: at the time of his arrest, at his questioning, and immediately prior to giving his confession. He also signed a standard waiver of rights' form. Three police officers who were present when the Defendant wrote his confession testified that the Defendant did not appear to be under the influence of drugs at the time and that his behavior seemed normal, aside from the fact that he was a little nervous or shakey. The Defen-

dant's accomplice testified that he had been with the Defendant since 9:00 A.M. on the morning of the crime, and that he did not observe the defendant take drugs or notice any unusual behavior indicating that the Defendant was under the influence of drugs. Indeed, Defendant was apparently quite able to break into the victim's home through a *second story window,* complete the burglary, flee, walk up a ramp at the Hancock County Jail while handcuffed after his arrest without assistance, and write a coherent confession in his own penmanship.

The only direct evidence supporting Defendant's claim is his own testimony that he took heroin and cocaine at approximately 8:30 A.M., before meeting his accomplice, and remained under the influence of these drugs at the time he wrote the confession. This testimony was corroborated to some degree by a report from the doctor who treated the Defendant *the day after his arrest* at the hospital. His written report stated that the Defendant was suffering from severe drug withdrawal. However, there was no indication as to what drug the Defendant had taken, the quantity of the drug, or whether, at the time the Defendant confessed, the drug was capable of affecting his mind to such an extent as to make the confession involuntary.

When a defendant challenges the voluntariness of his confession by alleging that he was under the influence of drugs, he must introduce evidence from which it could be concluded that the amount and the nature of drug consumed could produce an involuntary statement. *Damrell v. State* (1976), 170 Ind.App. 256, 352 N.E.2d 855; *Layton v. State* (1973), 261 Ind. 251, 301 N.E.2d 633. The mere fact that a confession was made by a defendant under the influence of drugs does not render it inadmissible evidence per se, particularly if the drugs were self-administered, 29 Am. Jur. 2nd, *Evidence* 578 (1954). It may, of course, be one factor considered by the trier of fact in determining whether a statement was voluntary.

In reviewing on appeal whether a confession was properly admitted, we do not weigh the evidence but rather determine whether there is substantial probative evidence to support the trial court's finding. We ordinarily will not disturb its ruling, even when that ruling is based upon conflicting evidence. *Richardson v. State* (1978), 268 Ind. 61, 373 N.E.2d 874. Thus, we find that here, where there

is conflicting evidence as to whether the Defendant was suffering from the influence of drugs when he confessed and where there is substantial evidence supporting the voluntary nature of the confession, the Defendant has failed to show that the trial court was clearly erroneous in ruling that the Defendant's confession was voluntarily made. *Robinson v. State* (1978), 175 Ind.App. 329, 371 N.E.2d 718.

## IV.  *Defense Exhibits.*

Defendant next argues that the trial court committed error by refusing to admit into evidence certain exhibits offered by Defendant at trial. These exhibits consisted of:  (1) the statement of Defendant's accomplice, Robert Sexton, (2) copies of the Hancock County Criminal and Juvenile dockets relating to Sexton's cases, and (3) a copy of a plea negotiations agreement between Sexton and the State.

During cross-examination of State's witness Officer Grass, McPherson offered into evidence a confession made by Robert Sexton, McPherson's accomplice, who did *not* testify at the trial. This statement closely correlated McPherson's own rendition of the events of the crime as set forth in his confession, except that the Defendant's name did not appear therein. Rather, Sexton referred to his companion by using the name "Poss". Sexton testified earlier at the motion to suppress hearing. However, the record does not reveal that he was subpoenaed to testify at the trial by the Defendant, although he was apparently available as he was then in custody at the Indiana Youth Correction Center.

The general rule with respect to the admission of extra-judicial declarations of a person other than the accused, confessing or tending to show that he committed the crime, may be found in 29 AM. Jur. 2d *Evidence* § 620 which reads as follows:

> "Extrajudicial declarations of the commission of criminal acts have been held, in most jurisdictions and in both criminal and civil cases, not admissible in evidence as declarations against interest. However, in an increasing number of jurisdictions such declarations have been held admissible, at least under special circumstances. It has been said that the rule excluding such declarations is unsatisfactory, arbitrary, and unsound, and that it is reasonable and safe to assume that the principle of self-protection

and self-interest which admits declarations against pecuniary or proprietary interest, in certain cases where the declarant is unavailable as a witness, operates with at least equal force in cases of declarations against penal interest." See also 22A C.J.S. *Criminal Law* § 749 and authorities cited therein.

Earlier Indiana criminal cases would indicate that such declarations are inadmissible. In *Siple v. State* (1900), 154 Ind. 647, 57 N.E. 544 the defendant was charged with first degree murder by administering poison to one Franklin P. Smith. In response to the defendant's attempt to introduce the extrajudicial declaration of a third party admitting the crime, the court stated at p. 545 of 57 N.E.:

"During the trial and at the proper time appellant offered to prove by a competent witness that within six hours after the death of Franklin P. Smith one John Cline said to the witness, in talking about the death of said Smith, 'I am the man who gave him the dose that turned up his toes; I always carry it right in here;' and as he spoke he pointed to an inside vest pocket. The evidence was excluded, and said action of the court is specified as a cause for a new trial. *It is settled beyond controversy that a defendant on trial cannot be permitted to show that a third person has admitted that he committed the crime.* 14 Cent. Dig. cols. 1647, 1648, § 781; Gillett, Ind. & Col. Ev. § 227, and cases cited in note 2; Whart. Cr. Ev. (9th Ed.) p. 176, § 225; *Smith v. State* 9 Ala. 990; *Snow v. State,* 58 Ala. 372, 54 Ala. 138; *West v. State,* 76 Ala. 98; *State v. Evans,* 55 Mo. 460; *Bonsall v. State,* 35 Ind. 460; *Jones v. State,* 64 Ind. 473, 484, 485; *Davis v. Conn.,* 95 Ky. 19, 23 S.W. 585, Am St. Rep. 201." [our emphasis]

See also, *Green v. State* (1900), 154 Ind. 655, 57 N.E. 637.

More recently in *McGraw v. Horn* (1962), 134 Ind.App. 645, 183 N.E.2d 206, an automobile personal injury case, the trial court permitted a police officer to testify that a third party had admitted to him "that he saw the defendant's car approach the intersection; that he did not see the Yield Right of Way sign; that he was unfamiliar with the neighborhood; and that he attributed that factor for his failure to see the sign." The officer issued a ticket to the third party for "failure to yield right of way" and the court admitted a transcript of the proceedings in the criminal case where the third party had entered a plea of guilty. This Court held the trial court erred in admitting the third party statements and admissions because of their hearsay nature. The

Court acknowledged that the statements of the third party and his plea of guilty to the traffic charge were declarations against his penal interest. After reviewing authorities which noted the general rule as to the admissibility of declarations against penal interest and noting that probably the modern trend is to the contrary, the Court stated as follows at p. 210 of 183 N.E.2d:

"In view of the weakness of the class of evidence involved here and in view of the lack of decisions of the courts of this State specifically outlining the limitations upon the admissibility thereof, we feel that we should be most cautious in extending the situations under which it is admissible, particularly where there is no privity of estate between a party to the action and the declarant, and no other exception to the hearsay rule is involved. We adopt the view that to render such declarations admissible they must have been against the pecuniary or proprietary interest of the declarant and not merely such as would subject him to criminal action or a civil suit. We do not consider *Keesling, Treasurer, et al, v. Powell, supra,* [(1898), 149 Ind. 372, 373, 49 N.E. 265, 266] to be contrary to this holding, for there the declaration was in effect a declaration of a receipt of money.

In our opinion the evidence was not admissible for another reason. Appellant testified that she did not know where the declarant Smith was, but had heard that he was in Michigan. Appellee, on whose behalf the evidence was offered, laid no further foundation for its admission. It was not shown that appellee did not know Smith's whereabouts or had made any effort whatsoever to procure his attendance or his deposition. In the absence of any showing of Smith's actual unavailability, it was error to admit testimony of his declarations made out of the hearing to appellant.

The court also admitted, over appellant's objections, a transcript of an affidavit and proceedings in a criminal case against Smith showing that he had entered a plea of guilty to a charge of failing to yield the right of way, which charge arose out of the accident involved here. The only ground urged in support of the admission of this evidence was that it was a declaration against interest. For the reasons heretofore ascribed with reference to the admission of the testimony of the police officer, it was error to admit this exhibit in evidence."

However, in *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L. Ed2d 297 the United States Supreme Court recently held a declaration against penal interest was admissible under circumstances whereby

its rejection would deny the defendant a fair trial. Chambers, faced with a murder charge, attempted to show by cross-examination of one McDonald and by calling three friends of McDonald that, in fact, McDonald had confessed to the murder in both a written, sworn statement and orally. The State's proof at the trial excluded the theory that more than one person committed the murder. The trial court had denied the extra judicial statements based on the Mississippi common law that a party "vouches" for and therefore may not impeach his own witness. Thus, the Supreme Court concluded that the confessions by McDonald were made under circumstances which bore substantial assurances of trustworthiness and such confessions, coupled with the defendant's inability to cross-examine the third person under the common law voucher rule of Mississippi, effectively deprived the defendant of a fair trial. In reaching its conclusion the Court distinguished the facts before it from cases which had excluded declarations against penal interest as follows at p. 1049 of 93 S.Ct.:

> "Few rights are more fundamental than that of an accused to present witnesses in his own defense. E.g., *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L. Ed. 2d 330 (1972); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L. Ed. 2d 1019 (1967); In re *Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L. Ed. 682 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

> We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our

holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial."

However, the question of whether declarations against penal interest are inadmissible hearsay in this State and do not come within the exception of declarations against pecuniary or proprietary interests had now been resolved. In *Taggart v. State* (1978), 269 Ind. 667, 382 N.E.2d 916 our Supreme Court refused to abandon the common law rule that such third party confessions are inadmissible hearsay. In *Taggart* the alleged exculpating statement confessing to the murder was purported to have been made by William McCall. The typewritten statement, unsigned, was originally delivered to the son-in-law of Taggart (who was then in prison) by one King Smith who stated that McCall would sign the statement only if paid $5,000 and, further, that McCall would repudiate the statement in court unless he was paid. Taggart attempted to introduce a typewritten copy, made by his son-in-law, of McCall's original written statement. McCall refused to testify at trial, pleading the Fifth Amendment. After carefully reviewing the facts and language of *Chambers* our Supreme Court held McCall's statement inadmissible, stating as follows:

"We thus believe that the holding in *Chambers* can be accepted within the existing common law relating to declarations against penal interest, as that common law is limited by the *Chambers* facts. * * *

While appellant has also fully and ably argued that we abandon the common law rule of the general inadmissibility of declarations against penal interest, we decline to follow the other jurisdictions that have so abandoned the distinction between these declarations and declarations against pecuniary interest. 'Declarations against interest,' generally, is always a terminology used in the context of an attempt to admit evidence that is hearsay. *Cf. McGraw v. Horn* (1962), 134 Ind.App. 645, 183 N.E.2d 206. With regard to third-party confessions, or 'declarations against penal interest,' we perceive good reasons for distrusting and disfavoring them, and for not carving out a new exception to the hearsay rule. * * *

In the present case, it is easy to distinguish the statement of McCall in issue from the persuasive assurances of trustworthiness

that characterized the statements in *Chambers*. There are, first of all, problems of foundation for admissibility of the statement. It is unsigned, purportedly a typed copy of an 'original' version of McCall's confession, and would have been sponsored by James Slagley, who purportedly received it from King Smith, not McCall himself. Also, Slagley's testimony about the statement is that it would not be admitted to by McCall unless McCall was first paid five thousand dollars by appellant Taggart. Thus, the entire circumstances surrounding the origin of this 'confession' are permeated with indicia of untrustworthiness. We hold that it was properly excluded from evidence as hearsay, and that such exclusion was not a violation of due process."

After reviewing the foregoing authorities and examining the facts in this case we find that the trial court did not err in refusing to admit the confession of Sexton and the record of his guilty plea and sentencing.[3] Initially we have considered such evidence in light of its reliability and feel it did satisfy the threshold question of trustworthiness. The State did not challenge it on that basis and Sexton was found guilty and sentenced as a minor to one to ten years imprisonment in reliance upon his declarations of guilt. However, we believe such evidence was properly rejected for either of two reasons. First, unlike *Chambers,* the statement of Sexton did not exculpate the Defendant. The admission of the statement and guilty plea still would not have proven the Defendant innocent in this case. *People v. Cane* (1975), 31 Ill.App. 2d 500, 333 N.E.2d 247, *Commonwealth v. Hackett* (1973), 225 Pa. Super. 22, 307 Atlantic 2nd 334. It would merely have created an additional question, that is, whether the Defendant McPherson was the "Poss" referred to in Sexton's statement. It is apparent to this Court that the effect of such evidence, if admitted, would have been to confuse, rather than clarify, the issues in the case. Second, the record does not indicate that Sexton was unavailable to testify at the trial.[4] In *McGraw v. Horn, supra,* the

3. Defendant's exhibit "D" was apparently the entire juvenile record of Sexton including an earlier commitment to the Indiana Boys School. The exhibit also indicated a juvenile court waiver for the crime charged in this case. This exhibit was properly rejected because the earlier juvenile history of Sexton was clearly irrelevant.

4. The Federal Rules of Evidence, effective July 1, 1975 authorizes the admission of statements against penal interest if the declarant is unavailable as a witness. Rule 804 provides in pertinent part as follows:

"(a) Definition of Unavailability. 'Unavailability as a witness' includes situtions in which

Court required a showing of the declarant's "actual unavailability" as a condition precedent to the admission of his statements. In *Chambers*, the fact that the declarant, although present in court, could not be examined under the "voucher" rule convinced the Supreme Court that the trustworthy hearsay statements were admissible in order to afford the defendant a fair trial. In our case Sexton was apparently available to testify if the Defendant had desired his presence.

Therefore we conclude that there are no special circumstances in the case before us to justify an exception to the rule excluding hearsay declarations against penal interest. The Defendant was not denied due process or a fair trial by the exclusion of Sexton's hearsay statements.

## V.  *State's Exhibits.*

The Defendant alleges the trial court erred in admitting an aerial photograph of the area surrounding the victim's home because such photograph had not been properly identified or authenticated and was immaterial and irrelevant.

The admission of photographic evidence rests largely within the discretion of the trial court. *Thornton v. State* (1978), 268 Ind. 540, 377

---

the declarant — (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

(b)   Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness. * * *

(3)   Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. * * * "

N.E.2d 613. A photograph may be offered as demonstrative evidence if identified and verified as accurate by someone with knowledge of the scene depicted and if it will be relevant and of assistance to the fact finder. The photographer need not be called to authenticate it, rather, anyone familiar with the material in the picture may testify as to its accuracy. *Boone v. State* (1978), 267 Ind. 493, 371 N.E.2d 708. During direct examination, Mrs. Black, the victim, aptly described the vicinity which the picture depicted, and testified that it was a true and accurate representation of the area. This sufficiently laid a foundation for admission of the photograph, which was certainly relevant to show, if nothing more, the location of victim's house in relation to where the Defendant was apprehended. Therefore, the photograph was properly admitted. *McCurdy v. State* (1975), 263 Ind. 66, 324 N.E.2d 489.

## VI. *Evidence of Flight.*

The Defendant objects to the introduction by the State of Hancock County Court Records concerning Defendant's failure to appear for trial on the originally scheduled date, and the consequential forfeiture of his bond. He argues that these exhibits were irrelevant and immaterial, that proper foundation was not laid, and that the exhibits were highly prejudicial.

A similar contention was addressed by this Court in *Swaney v. State* (1978), 176 Ind.App. 114, 374 N.E.2d 554, where that defendant also failed to appear at a scheduled hearing resulting in a forfeiture of his bond. The Court held:

> "Evidence of flight is properly admitted into evidence because of its relevancy as tending to show a consciousness of guilt on the part of a defendant. As stated in *Atkins v. State* (1974), 159 Ind.App. 387, 307 N.E.2d 76:

> '... Evidence of flight or other actions calculated to hide a crime or *effect an escape* is admissible as evidence of guilt. It is for the trier of fact to assign the weight to such evidence. *Turner v. State* (1970), 255 Ind. 427, 429, 265 N.E.2d 11. . . .' (our emphasis)

> It is the opinion of this court that Swaney's actions can properly be viewed as a clandestine attempt to perfect an escape, and consequently a form of flight, upon which evidence was properly introduced at trial and upon which the jury was properly instructed."

Thus, the public records revealing McPherson's flight were properly admitted. Adequate foundation for their admission was laid by the State pursuant to IC 34-1-17-7, which provides for authentication of public records.

## VII. *Instructions.*

The last issue presented for our consideration is whether the trial court erred in giving certain final instructions to the jury.

Final instruction number 28 concerning the jury's consideration of evidence of flight of the accused reads as follows:

> "You are instructed that you may consider evidence of the flight of the accused, if any or other actions of the accused calculated to effect such flight, if any, as showing consciousness of guilt, along with all the other evidence in this case."

The Defendant objected to this instruction on the grounds that it was ambiguous, the terminology "consciousness of guilt" being unexplained and therefore confusing or incomprehensible to the jurors.

An instruction is proper and does not invade the province of the jury when it tells the jury that flight of the accused is a circumstance which may be considered and from which they may draw, in connection with the other evidence presented, an inference of guilt. *Fraiser v. State* (1974), 262 Ind. 59, 312 N.E.2d 77; *Swaney, supra.*

Furthermore, it is within the discretion of the trial court whether or not to include definitions in an instruction. *Coonan v. State* (1978), 269 Ind. 578, 382 N.E.2d 157; *Stevens v. State* (1976), 265 Ind. 396, 354 N.E.2d 727. Charging that evidence of flight may show "consciousness of guilt" was not unclear or misleading, did not necessitate a definition of the phrase, and in light of the evidence presented, was not erroneous in this case.

The Defendant also objected to final instruction numbered 35 pertaining to possible verdicts which the jury could return, arguing that the possible "not guilty" verdict should have been listed first instead of at the end of the possible alternatives and that the order of possible verdicts as set forth did not clearly afford the Defendant the presumption of innocence until proven guilty. The instruction reads as follows:

"The court instructs you that under the law if you find the evidence so warrants it under Count I of the information you may find the defendant: (a) guilty of the offense of first degree burglary or (b) guilty of the offense of entering to commit a felony, or (c) not guilty. The Court further instructs you that under Count II of the information, if the evidence so warrants it, you may find the defendant: (a) guilty of the offense of assault and battery with intent to commit a felony, to-wit: first degree burglary, or (b) assault with intent to commit a felony, to-wit: first degree burglary, or (c) guilty of the offense of assault and battery, or (d) guilty of the offense of assault, or (e) not guilty."

We find this to be a frivolous argument, and further note that Defendant has failed to cite any authorities on point in support thereof in accordance with AP. 8.3(A)(7).

The judgment is affirmed.

Chipman, P.J. concurs.

Young, J. concurs.

NOTE—Reported at 383 N.E.2d 403.